UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

DANIEL TANKERSLEY,

            Plaintiff,

       v.

WILL ARCAND, in his individual
capacity as an employee of the State
Mining and Geology Board; STEPHEN M.
TESTA, in his individual capacity as an
employee of the State Mining and Geology
Board; and DOES 1–10,

            Defendants.

No. 2:15-cv-01278-TLN-CMK

**ORDER GRANTING DEFENDANTS'
MOTION TO STAY**

      The matter is before the Court pursuant to Defendants Will Arcand and Stephen M.

Testa's ("Defendants") motion to stay proceedings in this case.  (ECF No. 5.)  Plaintiff Daniel

Tankersley ("Plaintiff") opposes the motion.  (ECF No. 9.)  For the reasons stated below, the

motion to stay is GRANTED.

### I.  Factual Allegations

      Plaintiff is a friend of Joseph Hardesty and Yvette Hardesty ("Hardesty"),[1] the owners of

the Big Cut Mine (the "mine"), located in El Dorado County, California.  Before June 2010,

Plaintiff possessed a "limited interest" in the mine.  However, Plaintiff has never had authority to

---

[1] It is not clear to the Court if the relevant person(s) throughout the factual allegations is Joseph Hardesty, or
Joseph and Yvette Hardesty.  For the most part, Plaintiff uses the singular "Hardesty" throughout his briefing, and the
Court does the same herein.

1

1    control activities at the mine.  Plaintiff has never been an "operator" of the mine, as defined under

2    California's Surface Mining and Reclamation Act of 1975 ("SMARA"), Cal. Pub. Res. Code §

3    2710 *et seq.* (Complaint, ECF No. 1 ¶ 4.)

4         In June 2010, the State Mining and Geology Board (the "Board") made a determination

5    that Hardesty and Richard Churches ("Churches", another operator of the mine) did not have a

6    vested right to mine the site pursuant to SMARA.  (Compl. ¶ 6.)  As a result of activities that

7    allegedly occurred after this determination, the Board "issued a series of notices and orders to

8    Hardesty and Richard Churches finding they had violated SMARA."  (Compl. ¶¶ 7, 27.)  Plaintiff

9    has practical training and experience in the legal field, and has worked on legal matters involving

10   Hardesty and Churches.  (Compl. ¶ 5.)  In June 2011, Plaintiff appeared at a Board meeting to

11   accept documents relative to these alleged violations.  (Compl. ¶ 7.)

12        After June 2011, the "Board hearing notices identified [Plaintiff], if at all, as an agent of

13   Hardesty and Churches," but not as an "operator" as that term is used in SMARA.  (Compl. ¶ 8.)

14   *See e.g.* SMARA § 2731 ("'Operator' means any person who is engaged in surface mining

15   operations, himself, or who contracts with others [to do so] on his behalf …"); § 2774.1(a)–(b)

16   ("the lead agency or director may notify the operator of that [SMARA] violation" and an "order

17   … shall not take effect until the operator has been provided a hearing").  Plaintiff states that at no

18   time before or after June 2010, did he engage in surface mining operations at the mine, or contract

19   with anyone to do so on his behalf.  (Compl. ¶ 39.)

20        The Board issued an "Order to Comply" to Hardesty and Churches in September 2011.

21   At a Board meeting in December 2011, the Board moved to include Plaintiff as a jointly named

22   party to that order.  (Compl. ¶¶ 32–33.)

23        On January 12, 2012, the Board issued an administrative penalty order against Hardesty,

24   Churches, and Plaintiff for $750,000.  On June 13, 2013, the Board issued a superseding order in

25   the amount of $11,025,000.[2]  (Compl. ¶¶ 34, 36.)

26        Plaintiff alleges that Defendants violated his procedural and substantive due process right

27
28   [2] Previously, on March 10, 2011, the Board also issued penalties against Hardesty and Churches, but not Plaintiff, in the amount of $100,000.  (FAC ¶ 30.)  The June 13, 2013, order did not supersede this $100,000 penalty, but did supersede the $750,000 penalty.  (ECF No. 5 at 4 n. 2.)

2

by, among other things, imposing penalties against him without a hearing and despite the fact that Plaintiff was not an operator as defined under SMARA.  (Compl. ¶¶ 42–51.)  Plaintiff alleges that Defendants are "personally and directly responsible" for the administration of penalties without notice or a hearing.  (Compl. ¶ 3.)

The Board's June 13, 2013, order imposing penalties against Plaintiff, Churches, and Hardesty is the subject of actions currently pending in the California Superior Court, County of Sacramento, Case Numbers 2012-80001070 and 2013-80001561.  (Compl. ¶ 40.)

Relative to the aforementioned state court actions, Defendants further represent: on February 14, 2012, Plaintiff, Hardesty, and Churches filed a petition for writ of administrative mandate challenging the Board's $100,000 penalty order and the Board's $750,000 penalty order. On July 12, 2013, Hardesty, Churches, and Plaintiff filed a petition for writ of administrative mandate challenging the Board's $11,025,000 penalty order.  (ECF No. 5 at 4.)

On July 3, 2013, the Board filed a cross-complaint in the first administrative penalty action, against Hardesty, Churches, and Plaintiff, for declaratory and injunctive relief for operating the mine in violation of SMARA and for recovery of all administrative penalties assessed against them.  (ECF No. 5 at 4.)  On January 30, 2014, Hardesty, Churches, and Plaintiff answered the cross-complaint.  The relevant state court actions have been related to one another and are currently pending in Sacramento County Superior Court.  (ECF No. 5 at 4.)

**II.  Procedural History and Judicial Notice**

Plaintiff filed the complaint in this matter on June 12, 2015.  (ECF No. 1.)  The complaint brings two causes of action for violations of Plaintiff's procedural and substantive due process rights under the Fourteenth Amendment and 42 U.S.C. § 1983 respectively.

Defendants filed a motion to stay on October 29, 2015.  (ECF No. 5.)  Plaintiff filed an opposition on February 11, 2016.  (ECF No. 9.)  Defendant filed a reply on February 18, 2016. (ECF No. 12.)

The Court GRANTS the parties' requests for judicial notice of documents filed in the related state court proceedings, state court dockets, and the federal court docket in a federal civil rights lawsuit brought by Joseph and Yvette Hardesty and other plaintiffs, Case No. 2:10-cv-

1    02414.  (ECF Nos. 5, 10, 13.)  Plaintiff has objected that the Court cannot take judicial notice of

2    the fact that Plaintiff is an "operator" under SMARA, based on a statement in the February 2012

3    petition that all petitioners, including Plaintiff, were operators.  (ECF No. 11.)  The Court will

4    take judicial notice of the aforementioned documents to establish the fact of the related litigation,

5    and for the fact that the parties in those actions made certain representations in their filings.  The

6    Court does not take judicial notice of these documents for the truth of those representations.  *See*

7    *e.g. Stamas v. County of Madera,* 795 F. Supp. 2d 1047, 1061 (E.D. Cal. 2011) (taking judicial

8    notice that declarations were filed in other litigation but declining to take judicial notice of the

9    "factual support" in those declarations).

10       **III.  Analysis**

11          A.  <u>Standard of Review</u>

12          As an initial matter, Plaintiff invokes Fed. R. Civ. P. 7(b)(1)(B), which requires a party

13   bringing a motion to "state with particularity the grounds for seeking the order."  Plaintiff

14   questions whether Defendants seek a stay on jurisdictional grounds under Rule 12(b)(1), because

15   Defendants seek abstention under *Younger v. Harris*, 401 U.S. 37 (1971) and *Gilbertson v.*

16   *Albright*, 381 F.3d 965 (9th Cir. 2004); or whether Defendants seek a stay under Rule 12(b)(3)

17   based on improper venue, which Defendants also reference in their motion.  Plaintiff also

18   questions whether Defendants bring a "facial" motion based on what has been pled, or a "factual"

19   motion that calls for inquiry into evidence beyond the pleadings.  (ECF No. 9 at 8–9.)

20          In their reply, Defendants reiterate that they seek a stay under Rule 12(b)(3) because this

21   Court will be retaining jurisdiction of the case if a stay is granted, not dismissing it for lack of

22   jurisdiction.  *See Meredith v. Oregon*, 321 F.3d 807, 816 (9th Cir. 2003) ("in cases in which

23   *Younger* applies, the federal courts *have* jurisdiction over the parties' claims; *Younger* abstention

24   concerns whether they should exercise that jurisdiction").  Defendants also state their motion is

25   "plainly a 'facial attack' on the pleadings, as it is based solely on plaintiff's complaint and

26   judicially noticeable documents."  (ECF No. 12 at 8.)

27          The Court notes that neither party has cited Ninth Circuit authority expressly stating

28   which Rule of Civil Procedure is the appropriate rule under which a party invokes *Younger*

4

1 abstention. However, Defendants direct the Court to a recent Ninth Circuit decision which

2 reviewed a district court's grant of abstention under *Railroad Commission of Texas v. Pullman*

3 *Co.,* 312 U.S. 496 (1941) and *O'Shea v. Littleton,* 414 U.S. 488 (1974). *See Courthouse News*

4 *Serv. v. Planet*, 750 F.3d 776 (9th Cir. 2014). There is similarity in the requirements for

5 abstention under *Pullman* and *O'Shea*, and the requirements for abstention under

6 *Younger/Gilbertson*, *infra*.[3] In *Courthouse*, the Ninth Circuit wrote:

> We treat the factual allegations in [plaintiff's] complaint as true for
> the purpose of reviewing the district court's decision to abstain. In
> his motion to dismiss, [defendant] explicitly represented to the
> district court that it was obligated to assume the truth of the
> complaint's allegations … This representation suggests that
> [defendant's] motion was a motion to dismiss for failure to state a
> claim upon which relief can be granted under Federal Rule of Civil
> Procedure 12(b)(6), and that we should take the well-pleaded facts
> in the complaint as true.
>
> …
>
> Even if we were to view Planet's motion as a motion to dismiss for
> lack of subject matter jurisdiction under Rule 12(b)(1), it is a facial
> challenge to the federal court's exercise of jurisdiction, not a factual
> one. A factual challenge rel[ies] on affidavits or any other evidence
> properly before the court to contest the truth of the complaint's
> allegations. [Defendant's] motion did not do so. It expressly
> treated the complaint's allegations as true … Defendant's motion to
> dismiss is therefore a facial Rule 12(b)(1) motion, if it is a Rule
> 12(b)(1) motion at all.

18 *Id.* at 779–80 (internal citations and quotations marks omitted). *Courthouse* also observed: "We

19 have not squarely held whether abstention is properly raised under Rule 12(b)(6), Rule 12(b)(1),

20 both, or neither." *Id.* at 779 n. 2. *See e.g. Porter v. Jones,* 319 F.3d 483, 489 (9th Cir. 2003);

21 *Scotts Co. LLC v. Seeds, Inc.,* 688 F.3d 1154, 1159–60 (9th Cir. 2012); *Potrero Hills Landfill,*

22 *Inc. v. Cnty. of Solano,* 657 F.3d 876, 881 (9th Cir. 2011) (noting that "petitioners intervened ...

---

[3] The requirements for abstention under *Pullman* are: "1) the case touches on a sensitive area of social
policy upon which the federal courts ought not enter unless no alternative to its adjudication is open, (2)
constitutional adjudication plainly can be avoided if a definite ruling on the state issue would terminate the
controversy, and (3) the proper resolution of the possible determinative issue of state law is uncertain." *Id.* at 783–
784 (citing *Porter v. Jones,* 319 F.3d 483, 492 (9th Cir. 2003).

Relatedly, the Ninth Circuit has "come to view *O'Shea* as standing for the more general proposition that
'[w]e should be very reluctant to grant relief that would entail heavy federal interference in such sensitive state
activities as administration of the judicial system.'" *Id.* at 789–90 (citing *L.A. Cnty. Bar Ass'n v. Eu,* 979 F.2d 697,
703 (9th Cir. 1992)). "*O'Shea* compels abstention where the plaintiff seeks an 'ongoing federal audit' of the state
judiciary, whether in criminal proceedings or in other respects." *Id.* at 790 (citing *E.T. v. Cantil–Sakauye,* 682 F.3d
1121, 1124 (9th Cir. 2011).

1    and moved to dismiss under [Rules] 12(b)(6) and 12(b)(1), or in the alternative to abstain from

2    deciding the case").  "This case does not require us to decide which Rule, if either, provides the

3    correct vehicle for a motion to abstain."  *Courthouse*, 750 F.3d at 779 n. 2.

4            Defendants do not cite authority finding that a motion to stay under *Younger* must be

5    brought as a 12(b)(3) motion.  However, Defendants state their motion is "plainly a 'facial attack'

6    on the pleadings, as it is based solely on plaintiff's complaint and judicially noticeable

7    documents."  (ECF No. 12 at 8.)  Plaintiff also objects to Defendants' reliance on extra-pleading

8    evidence for making their case.  (ECF No. 9 at 9; ECF No. 11.)  Plaintiff submits that he "in no

9    way intends to convert defendants' seeming facial attack (based upon their use of a request for

10   judicial notice) into a factual attack."  (ECF No. 9 at 9.)  Based on *Courthouse, supra* – and because

11   both parties acknowledge the instant motion as a facial motion – the Court construes the facts in

12   the complaint to be true for the purposes of this motion.[4]  The Court also accepts as true the fact

13   that particular state and federal court actions are pending, and that representations made in the

14   attached filings (ECF Nos. 5, 10, 13) were in fact made, although the content of those

15   representations is not accepted as true.

16          It has been stated that, "*Younger* generally requires federal courts to abstain from taking

17   jurisdiction over federal constitutional claims that involve or call into question ongoing state

18   proceedings."  *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2nd Cir. 2002).

19   "Although the *Younger* abstention doctrine was born in the context of state criminal proceedings,

20   it now applies with equal force to state administrative proceedings."  *Id.*  "This doctrine of federal

21   abstention rests foursquare on the notion that, in the ordinary course, a state proceeding provides

22   an adequate forum for the vindication of federal constitutional rights."  *Id.* (internal quotation

23   marks omitted).

24          In *Gilbertson*, *supra*, plaintiff's land surveyor's license was revoked by the Oregon State

25   Board of Examiners for Engineering and Land Surveying.  After a hearing, the board refused to

26   reinstate plaintiff's license.  Plaintiff appealed the board's decisions to the Oregon Court of

27

28          [4] The district court in *Nobby Lobby, Inc. v. City of Dallas*, 767 F. Supp. 801 (N.D. Tex. 1991), *infra*,
     weighed evidence before abstaining in part under *Younger*.

                                                      6

1  Appeals.  While the appeals were pending, plaintiff filed a federal action under 42 U.S.C. § 1983,

2  seeking money damages.  The district court dismissed the action on the basis of *Younger*

3  abstention.  On appeal, the Ninth Circuit held that stay, rather than dismissal, was appropriate.

4  *Gilbertson*, 381 F.3d 965 ("federal courts should not dismiss actions where damages are at issue;

5  rather, damages actions should be stayed until the state proceedings are completed").  In the

6  instant case, *Gilbertson* provides an appropriate framework for analysis because Plaintiff also has

7  filed an action for damages under 42 U.S.C. § 1983; there are pending state court actions initiated

8  by Plaintiff, one of which Defendants responded to with a cross-complaint; and Defendants have

9  moved for a stay in this Court on the basis of *Younger* abstention.

10      As stated in *Gilbertson*: "*Younger* principles apply in an action for damages pursuant to

11  42 U.S.C. § 1983 in which the federal plaintiff brings a constitutional challenge to a state

12  proceeding when [1] that proceeding is ongoing; [2] the state proceeding is of a judicial nature,

13  implicating important state interests; and [3] the federal plaintiff is not barred from litigating his

14  federal constitutional issues in that proceeding."  *Id.* at 984 (numbers added).  Additionally, [4]

15  the federal action must enjoin, or have the "practical effect" of enjoining, the state court action.

16  *Potrero Hills*, 657 F.3d at 882 (9th Cir. 2011) (citing *AmerisourceBergen Corp. v. Roden,* 495

17  F.3d 1143, 1148–49 (9th Cir. 2007)) (number added).

18          B.  Defendants' motion to stay: *Younger* abstention

19      Plaintiff does not respond specifically to Defendant's arguments on these four

20  requirements.  Plaintiff argues the bad faith exception to the *Younger* doctrine must defeat

21  Defendant's motion for a stay; that argument is addressed, *infra*.  However, as a threshold matter

22  the Court finds Defendants meet the burden of showing *Younger* abstention is appropriate.  For

23  clarity, the Court restates Defendants' position as to the four *Younger* requirements.

24      Defendants argue the first requirement is met because their "state-initiated enforcement

25  proceedings," i.e. its cross-complaint filed on July 3, 2013 in state court, were filed before the

26  instant federal action.  (ECF No. 5 at 6.)  The "critical question is not whether the state

27  proceedings are still 'ongoing', but whether 'the state proceedings were underway before

28  initiation of the federal proceedings.'"  *Kitchens v. Bowen*, 825 F.2d 1337, 1341 (9th Cir. 1987)

(citing *Fresh Int'l Corp. v. Agricultural Labor Relations Board*, 805 F.2d 1353, 1358 (9th Cir. 1986)).  The parties do not dispute that the relevant state court actions are pending, and the parties in those actions are contesting the imposition of penalties.  Therefore, the first requirement for *Younger* abstention is met.

Second, Defendants argue that their SMARA enforcement proceedings implicate state interests.  "Where the state is in an enforcement posture in the state proceedings, the 'important state interest' requirement is easily satisfied, as the state's vital interest in carrying out its executive functions is presumptively at stake."  *Potrero Hills*, 657 F.3d at 883–884.  Defendant submits that SMARA seeks to prevent and minimize adverse environmental effects, reclaim mined lands to a useable condition, produce and conserve minerals, and eliminate certain public health and safety hazards.  (ECF No. 5 at 7.)  Defendants thus have stated an appropriate state interest.  *See e.g. Woodfeathers, Inc. v. Washington Cty., Or.,* 180 F.3d 1017, 1021 (9th Cir. 1999) ("the County's enforcement of its solid waste ordinance implicates important state interests for the purpose of *Younger v. Harris*").

Third, Defendants argue that "[s]tate courts are 'presumed adequate to raise federal questions in the absence of unambiguous authority to the contrary.'"  *Id.* at 1020 (quoting *Pennzoil Co v. Texaco, Inc.*, 481 U.S. 1, 15 (1987)).  Elsewhere in his opposition, Plaintiff argues that no federal civil rights claims have been pleaded in the state court action.  (ECF No. 9 at 16.)  Plaintiff also argues that the state court proceedings are not similar because they involve Hardesty, Churches, and the Board, whereas this action is restricted to Plaintiff and the individual Defendants.  (ECF No. 9 at 16.)  However, the July 12, 2013, petition for writ of mandate seeks redress for the Board's alleged abuse of discretion and imposition of penalties without due process.  (July 12, 2013 Petition, ECF No. 5-4 ¶ 30).  Plaintiff has also asserted affirmative defenses in state court on the basis that he, Hardesty, and Churches were "denied constitutional due process in the decision of the [Board] to impose an excessive penalty and such penalty violates due process under the United States Constitution."  (Answ. to July 3, 2013 Cross Compl., ECF No. 5–6 at 14.)  Plaintiff does not cite authority which would bar his being able to raise these federal questions in state court. *Woodfeathers*, 180 F.3d at 1020.  Therefore, the Court finds the

8

1    third requirement for *Younger* abstention is met.

2           Fourth, Defendants argue this action will have the practical effect of enjoining the state

3    court proceedings.    Defendants submit that in order to determine whether Plaintiff is entitled to

4    damages in this action, the Court will be required to determine, among other things, whether

5    Board staff committed a constitutional violation in assessing penalties against Plaintiff and

6    whether Plaintiff can be considered an "operator" within the meaning of SMARA.  If the state

7    court determines that no constitutional violation occurred or that Plaintiff is considered an

8    "operator", it may preclude the need for this Court to adjudicate this action.  Plaintiff does not

9    explain why he cannot (or will not) make the argument in state court that he is not an "operator"

10   under SMARA.  On this issue, Defendants direct the Court to *Gilbert*, 381 F.3d at 979–80, which

11   held:

12              We conclude that *Younger* principles may apply to claims for
                damages under § 1983. Damages suits that turn on a constitutional
13              challenge to pending state proceedings implicate the reasons for
                *Younger* abstention as much as equitable or declarative relief
14              actions because to determine whether the federal plaintiff is entitled
                to damages—and to determine whether the federal defendant is
15              entitled to immunity—the district court must first decide whether a
                constitutional violation has occurred.  []  This determination would
16              have the same practical impact as [a] declaration [].  It would
                frustrate the state's interest in administering its judicial system, cast
17              a negative light on the state court's ability to enforce constitutional
                principles, and put the federal court in the position of prematurely
18              or unnecessarily deciding a question of federal constitutional law.
                Therefore, a determination that the federal plaintiff's constitutional
19              rights were violated would be just as intrusive as a declaratory
                judgment.
20
     Here, there are material, overlapping issues that would be decided by this Court and the state
21
     court.  The concerns stated in *Gilbert* are implicated here.  Thus, the Court finds that the fourth
22
     requirement for *Younger* abstention is met.
23
            Based on the foregoing, the Court finds that all four requirements are met, thus,
24
     Defendants meet their burden of showing this matter should be stayed under the *Younger*
25
     doctrine.
26
            C.  Plaintiff's opposition and Defendants' reply: bad faith exception to *Younger*
27
            Plaintiff argues *Younger* abstention is inapplicable because administrative proceedings
28

                                                     9

1    were imposed against him to retaliate against him and to harass him.  "Despite the strong policy

2    in favor of abstention, a federal court may nevertheless intervene in a state proceeding upon a

3    showing of 'bad faith, harassment or any other unusual circumstance that would call for equitable

4    relief.'"  *Diamond,* 282 F.3d at 198 (citing *Younger,* 401 U.S. at 54).  "However, a plaintiff who

5    seeks to head off *Younger* abstention bears the burden of establishing that one of the exceptions

6    applies."  *Id.*

7            Plaintiff argues section 2774.1 of SMARA does not authorize the Board to impose

8    penalties against him as an "agent" of an operator, and Plaintiff's status is in fact that of "agent".

9    Plaintiff points out that the Board never held a hearing in which he was identified as an operator,

10    and he was not listed as such in the vested rights application that Churches and Hardesty

11    submitted to the Board.  Plaintiff also alleges "categorically that he never engaged in surface

12    mining at Big Cut Mine, and had no power to dictate, direct, or control any activities that

13    occurred at Big Cut Mine."  (ECF No. 9 at 10.)  Plaintiff thus disputes factually and legally

14    whether he meets the requirements for an operator under SMARA.

15           Plaintiff also states he is "ready to submit the following in an amended pleading or

16    through declaration testimony":  During the past 20 years, he has represented himself in two civil

17    rights lawsuits, and has provided paralegal assistance to attorneys in "defending or prosecuting

18    approximately 20 over [sic] civil rights actions."  (ECF No. 9 at 12.)  Plaintiff was a paralegal for

19    Hardesty in a civil rights action[5] against Defendant Testa and other governmental officials, which

20    "sought $100,000,000 in compensatory damages."  (ECF No. 9 at 13.)  In or around early 2011,

21    after Hardesty filed the civil rights action, one of Hardesty's attorneys spoke with Testa about the

22    possibility of dismissing him from the action, but Hardesty nonetheless retained Testa as a

23    defendant, in part influenced by Plaintiff's advice.  Hardesty terminated the attorney who opposed

24    retaining Testa as a defendant.  Plaintiff believes that the instant Defendants "took steps to have

25    administrative penalties imposed upon him in retaliation for the role he played in Hardesty

26    naming and retaining Testa as a defendant in Hardesty's civil rights action."  (ECF No. 9 at 13.)

27           Defendants respond that Plaintiff cannot meet his burden of establishing the bad faith

28
_____
        [5] Civ. No. S–10–2414 KJM KJN, E.D. Cal.  (Pl.'s Requ. Jud. Not., ECF No. 10.)

1    exception to *Younger*.  Defendants argue that Plaintiff must show that "the party bringing the

2    state action [has] no reasonable expectation of obtaining a favorable outcome."  *Diamond,* 282

3    F.3d at 199 (quotation marks omitted).  "A state proceeding that is legitimate in its purposes, but

4    unconstitutional in its execution – even when the violations of constitutional rights are egregious

5    – will not warrant the application of the bad faith exception."  *Id.*  The Ninth Circuit has found

6    *Younger* abstention inapplicable where: "[plaintiff's] allegations … fall far short of establishing

7    bad faith of the sort sufficient to invoke [the bad faith and harassment] exception.  There was no

8    allegation of repeated harassment by enforcement authorities with no intention of securing a

9    conclusive resolution by an administrative tribunal or the courts, [] or of pecuniary bias by the

10   tribunal."  *Partington v. Gedan*, 961 F.2d 852, 861–62 (9th Cir. 1992).

11        Defendants argue that Plaintiff cannot meet this standard.  First, the Board, not state

12   defendant employees, imposed administrative penalties on Plaintiff.  Defendants are staff to the

13   Board and have no vote in its decisions.  Cal. Pub. Res. Code §§ 660, 670–671.  Plaintiff does not

14   allege any "repeated harassment" or "pecuniary bias" by either the Board or Defendants.

15   *Partington*, 961 F.2d at 861–862.  Further, the Board's intention to secure a "conclusive

16   resolution" of this dispute is demonstrated by its filing of a state court cross-complaint against

17   Plaintiff for violations of SMARA and for recovery of the administrative penalties imposed.  *Id.*

18        Second, Plaintiff's conclusory allegations of bad faith and retaliation are insufficient to

19   satisfy his burden.  *Kirschner v. Klemons*, 225 F.3d 227, 236 (2nd Cir. 2000) ("[m]ere conclusory

20   allegations of bias are insufficient to overcome *Younger*").  While Plaintiff's complaint contains

21   factual allegations in support of his contention that the Board violated his due process rights,

22   there are not allegations regarding a bad faith or retaliatory motive (although there are allegations

23   of bad faith in the opposition).  But even assuming the truth of these allegations, Plaintiff does not

24   show how the pending state enforcement proceeding by the Board is other than "legitimate in its

25   purpose but unconstitutional in its execution," and as such "will not warrant the application of the

26   bad faith exception."  *Diamond*, 282 F.3d at 199.

27        Third, Plaintiff's reference to a civil rights action that he worked on is not sufficient to

28   establish that the Board imposed penalties in retaliation.  Even if the Board had improperly

1   imposed penalties, there is no evidence that the individual Defendants, as opposed to the Board,

2   caused the imposition of penalties in response to the civil rights action.

3          Fourth, the Board had a reasonable and good-faith belief that Plaintiff was liable for

4   administrative penalties for illegal surface mining operations at the mine.  For example, the

5   February 2012 state court petition alleges that Plaintiff is an owner and operator of the mine.[6]

6   (ECF No. 5–3 ¶¶ 1, 3.)  Plaintiff now submits a declaration from his former attorney who

7   prepared that petition, stating that the attorney mistakenly made the allegation that Plaintiff was

8   an operator of the mine.  (ECF No. 11, Ex. 1 ¶ 3.)   However, Defendants submit that said

9   attorney did not prepare the declaration until over three years after he filed the February 2012

10  petition; that declaration was not filed in the state court proceeding; and Plaintiff has not amended

11  the February 2012 petition to omit this allegation.[7]  (ECF No. 12 at 11.)

12         D.  Conclusion

13         The two main legal and factual issues presented by the parties are: whether there is

14  evidence of Defendants' bad faith attempt to enforce penalties against Plaintiff, and whether

15  Plaintiff meets the requirements for an "operator" under SMARA.  Both of those issues require

16  factual inquiry, and it appears that inquiry or an overlapping one will be conducted in state court.

17  Defendants concede that the Court may assume the factual allegations in the pleadings to be true,

18  and Plaintiffs have expressly objected to Defendants' attempts to use extra-pleading evidence.

19  (ECF No. 9 at 9; ECF No. 11; ECF No. 12 at 8.)   Therefore, this Court rules on the instant motion

20  to stay as a facial motion based upon the complaint and judicially noticeable documents.  The

21  Court also considers Plaintiff's proffer of what he would submit in an amended pleading or

22  declaration, but only insofar as this proffer clarifies allegations in the complaint or moves the

23  Court to seek additional briefing.

24         Based upon the allegations in the complaint and judicially noticeable documents, and

25         [6] The portion cited by Defendants refers collectively to Joe and Yvette Hardesty, Churches, and Plaintiff as

26  "owners and operators of the Big Cut Mine property"; it does not individually single out Plaintiff as an operator.
    (ECF No. 5–3 ¶ 3.)

27         [7] It is not clear to the Court what the status of this declaration is.  The attached document is captioned as a

28  Sacramento County Superior Court declaration in support of a motion to amend the February 2012 petition, Case No.
    34-2012-80001070.

1   Plaintiff's proffer in his opposition, Plaintiff has not met his burden of showing the bad faith

2   exception to *Younger* applies.  Plaintiff's complaint shows there is a dispute about whether he

3   qualifies as an operator and whether that finding will dispose of the Board's claim that he is

4   subject to penalties.  Plaintiff's proffer in his opposition – that he was a paralegal on a civil rights

5   action against Defendant Testa, and may have influenced that action's retaining of Testa as a

6   Defendant – is an attenuated allegation.  Even accepted as true, these allegations do not constitute

7   "repeated harassment by enforcement authorities with no intention of securing a conclusive

8   resolution by an administrative tribunal or the courts, [] or of pecuniary bias by the tribunal."

9   *Partington*, 961 F.2d at 861–62.  *See also Baffert v. California Horse Racing Bd.*, 332 F.3d 613,

10  621 (9th Cir. 2003) (citing *Kugler v. Helfant,* 421 U.S. 117, 126 n. 6 (1975)) ("In the *Younger*

11  abstention context, bad faith 'generally means that a prosecution has been brought without a

12  reasonable expectation of obtaining a valid conviction'"); *Worldwide Church of God, Inc. v. State*

13  *of Cal.*, 623 F.2d 613, 616 (9th Cir. 1980) ("Nor do the [plaintiff's] pleadings, in their present

14  form, allege harassment or bad faith with sufficient specificity to trigger the [bad faith] Younger

15  exception").  The facts pled by Plaintiff show that it is speculative whether bad faith exists, and

16  that Plaintiff disputes whether the Board may impose penalties against Plaintiff.

17       The Court has considered Plaintiff's allegations in light of the two main authorities cited

18  in his opposition.  In *Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d 82 (5th Cir. 1992), city police

19  officers, pursuant to a warrant, searched and seized video equipment (among other items) from

20  various adult-themed stores owned by plaintiff Nobby Lobby.  An employee was later criminally

21  charged in state court for violating § 16.01 of the penal code.  Nobby Lobby then filed a federal §

22  1983 suit alleging that the search, seizure, and prosecution were done in bad faith and for the

23  purpose of harassment.  Nobby Lobby also sought a preliminary injunction against the pending

24  state proceedings.  The district court abstained from enjoining the pending state criminal

25  proceedings, but did enjoin the city (and hence did not abstain under *Younger*) from continuing to

26  seize equipment.  The district court concluded that the city had acted in bad faith by repeatedly

27  seizing equipment, because it knew that the Fifth Circuit had already determined the seized items

28  were not within the purview of the state statute.  *See Universal Amusement Co. v. Vance,* 559

13

1   F.2d 1286 (5th Cir. 1977); *Nobby Lobby, Inc. v. City of Dallas*, 767 F. Supp. 801, 807 (N.D. Tex.

2   1991) ("[T]he Court finds that the City did not have a good-faith belief it could gain valid

3   convictions under its application of Section 16.01. This is particularly true in light of the fact that

4   the ruling of the district court in *Universal* has been adopted by the highest criminal court of

5   Texas. The short of the matter is that there was no tenable legal foundation.").

6          By contrast, the allegations in Plaintiff's complaint and opposition and the attached state

7   court filings, show there is a dispute about whether penalties may be imposed against Plaintiff.  In

8   sum, Defendants' position is: Plaintiff falls within the definition of an operator, given that

9   SMARA § 2731 includes those whose contract with others to conduct operations on their behalf;

10  Plaintiff has participated in penalty proceedings on the owners' and operators' behalf; Plaintiff's

11  2012 petition identified him as an operator; and Plaintiff did not bring this issue to the Board until

12  June 2015 at the earliest, about two years after the Board had issued its third and final penalty

13  order.  (ECF No. 12 at 12.)  Plaintiff disputes this position, but the allegations in the complaint

14  and Plaintiff's proffer in his opposition, even accepted as true, do not compel a finding that

15  Defendants had no "good faith" or "tenable" belief that he was liable for penalties, and then

16  additionally, caused the Board to impose those penalties.  *Nobby Lobby*, 767 F. Supp. at 807.

17         Plaintiff also cites *Cullen v. Fliegner*, 18 F.3d 96 (2nd Cir. 1994).  In *Cullen*, a school

18  teacher was disciplined for protesting at a school board election.  The school teacher brought a

19  federal action seeking to enjoin the state disciplinary proceeding, and the district court found that

20  the state prosecution was brought in bad faith.  The Second Circuit agreed that the district court

21  had properly *not* applied *Younger* abstention because the "specific findings" in the court's order

22  showed disciplinary proceedings had been "brought in retaliation for the exercise of [plaintiff]

23  Cullen's First Amendment right."  *Id.* at 104.  Those findings included that defendants (the school

24  district and officials):

25               had a "past history of personal conflict" with Cullen, and their
            corresponding desire "to do something about" him rose to the "level
26          of animus." More specifically, the court took note of the "charges
            and hearings and imposition of fines" that preceded the School
27          District's attempt to enforce [the school board election statute]
            against Cullen. With respect to this enforcement, the district court
28          found that [defendants] had pursued [Cullen] in a "strictly *ad*

                                              14

1   *hominem*" manner, and the charges themselves, along with the
     disciplinary proceeding that followed, "imposed a chilling effect"
2    on [Cullen's] First Amendment rights.

3   *Id.* at 104 (citing the district court's order, No. 93 CIV. 2569 (CLB), 1993 WL 625541 (S.D.N.Y.

4   June 21, 1993)).  In comparison, Plaintiff does not allege similar facts, substantively or in scope,

5   which would lead to the conclusion that Defendants influenced the Board to retaliate against him

6   by imposing penalties.

7           The Court underscores that "[s]tate courts are presumed adequate to raise federal

8   questions in the absence of unambiguous authority to the contrary."  *Woodfeathers, Inc.*, 180 F.3d

9   at 1020.  It appears the factual and legal issues raised in Plaintiff's opposition to this motion –

10  including their relevance to a procedural and substantive due process claim – can be adjudicated

11  in the state court proceedings.

12          For the stated reasons, Plaintiff does not meet his burden of showing the bad faith

13  exception to *Younger* abstention applies.[8]

14  **IV.  Conclusion**

15          For the stated reasons, Defendants' motion to stay is GRANTED until "final adjudication

16  of Case Nos. 34-2012-80001070 and 34-2013-80001561 currently pending in Sacramento County

17  Superior Court."  (ECF No. 5 at 11.)

18

19  Dated: May 25, 2016

20

21                                                              Troy L. Nunley
                                                                United States District Judge
22

23

24

25

26

27          [8] Because the Court finds Defendants meet the burden of establishing abstention under *Younger*, the Court
     does not rule on Defendants' argument that stay is also appropriate under *Colorado River Water Conserv. Dist. v.*
28   *United States*, 424 U.S. 800 (1976).

15